**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

MICHAEL BROWN, KENNETH ADAMS, JOHNNY
ADAMS, JOHN ALBRITTON, THOMAS ALLEN,
MALCOLM ALLGOOD, JOHN ALVARADO,
DANIEL ANDERSON, BRADLEY ANDERSON,
LARRY ANDERSON, WINFRED ANDREWS,
STEPHEN ANDREWS, DAVID ARENS, TROY
ARNOLD, JAMES ASHLEY, CARL ASHLINE JR.,
RICHARD ASKREN, DERRICK AUSTIN,
CHRISTOPHER AUSTIN, JEFFERY BAILEY,
RONALD BAILEY, RANDALL BAKER, THOMAS
BALDESCHWIELER, RODNEY BALLARD,
MICHAEL BALLS, BOBBIE BARNETT, CLARENCE
BARNETT, ARNOLD BARR, ROBERT BARRY,
PAUL BARTH, ROMAN BATES, WAYNE
BAZEMORE, DAVID BEAD, DOUGLAS BEAM,
PETER BECKWITH, DEAN BELDEN, THOMAS
BELIECH, BILLY BELL, NEAL BELL, JAMES BELL,
BRIAN BENNETT, MARK BERGMAN, BENNY
BERNEY, WILLIAM BERRY, LEO BERUBE,
STANLEY BEST, PERCY BICKERSTAFF, SAM
BILBREW, DAVID BLACKWELL, MARK BLUNT,
RICKEY BOULT, JACK BOW, DALE BOYER,
BRUCE BRANSON, TIMOTHY BREWER, HENRY
BRYANT, GARY BUNDAGE, AARON BURDEX,
KIM BURKE, DAVID BURKE, EDWARD BURRESS,
KENNETH BUSBY, LESLIE BUSBY, VERNON
BUTLER, JAMES CALANO, ARNOL CALHOUN,
DAVID CAMPBELL, THAYER CAPT, EDWARD
CARMAN, WILLIAM CARPENTIER, BRIAN
CARPIO, BERNARD CARR, HARRY CARTER,
EUGENE CASE, JAMES CATALANO, RICHARD
CAUSEY, ANGELO CENTINEO, ADAM CETINSKI,
JOHNNY CHALK, MICHAEL CHAPPELL, JAMES
CHILDRESS, DUDLEY CHRISTIAN, JAMES CHUN,
JAMES CICERO, JAMES CLEMONS, CHARLES
COCHRAN, ROBIN COLEMAN, BENJAMIN
COLEMAN, CHARLES CONGER, CRAIG CONROY,
EDDIE COOK, WILLIAM COOLEY, RANDELL
COOPER, WILLIAM COOPER, EDWARD
COVINGTON, DARRYL W CRAUS, VICTOR
CRAWFOOT, MATTHEW CRAWFORD, STEPHEN
CROXFORD, TIMOTHY CRYER, LADDY
CULVERHOUSE, WILLIE CUNNINGHAM, JR., PHIL

Civil Action No. _____

**NOTICE OF REMOVAL**

**JURY TRIAL DEMANDED**

1

CURRAN, BYRON CYPHERS, CARY DANNELLY,
DWIGHT DAUBERMAN, JAMES DAVENPORT,
WARREN DAVID, STEVEN DAVIS, CARL DEGEN,
GEORGE DERK, MICHAEL DIAMANDIS, MARTIN
DIAMOND, GLENN DIETZ, CURTIS DUKE, DAVID
DUNCAN, DANNY DUPRE, RICHARD DYER,
ROBERT EGAN, DENNIS EGGERT, ERIK EGGINS,
JOHN ESPOSITO, FREDERICK ESPY, EARL
EVANS, CLIFFORD FAIR, STEPHEN FANGMAN,
RANDALL FARR, MICHAEL FERERO, BRYAN
FITZPATRICK,HARVEY FLEMMINGS, DALE
FLETCHER, ROBERT FOGG, JERRY FORD,
ROOSEVELT FRANKLIN, FREDDY FRAS, HOZ
FREITAG, ROY FULMER, MARK FUQUA, JEFFERY
FURR, MELVIN GAGE, STEPHEN GARMAN,
GERALD GELINAS, STEVEN GERENCSER, LARRY
GIBBS, GARRY GIDLEY, GARY GILBY, DALE
GILCHRIST, RICHARD GILLESPIE, L.B. GIRDNER,
JOHN GOCEK, ABRAHAM GOLDSTEIN, ROBERT
MARES GONZALES, THOMAS GOSLAWSKI,
WAYNE GOULD, BENNY GRANT, JAMES GRAY,
RODNEY GREEN, JOHN GREENE, EVAN GRENIER,
DAVID GREWE, DAVID GRIFFIS, LARRY GROSS,
JEWEL GRUNDY, HERBERT HAMILTON, MELVIN
HARDY, HERMAN HARNED, CARL HARRINGTON,
ANTONIO HARRIS, PETER HART, RODNEY
HASTIE, RUSSELL HATFIELD, MIKEAL HAWES,
JOHN HAWSE, TRAVIS HEAD, SR., GARY
HEIDTBRINK, WILLIAM HERRIN, JAMES
HILDERBRANDT, RICHARD HILL, DONALD
HINSON, JAMIE HIRSCHBERGER, CHARLES
HOAGLAND, STEVEN HOBBS, CRAIG HOFFMAN,
RAY HOH, VERNON HOLLINGSWORTH, KARYN
HOLT, ROBERT HOOS, HAROLD HOPKINS,
NEWTON HORNE, WALTER HOUSTON, O.D.
HOWARD, DANIEL HOWE, LARRY HOWELL,
BOBBY HUNTER, RONALD ISOM, DAVID
JACINTO, CHARLES JACKSON, EDUARDO JAIME,
JEFFERY JAKELSKI, JERRY JAMES, LEROY
JAMISON, RODGER JAY, ANDREW JENKINS,
MARK JENKINS, CLIFFORD JOHNSON, JAMES K.
JOHNSON, FREDERICK JOHNSON, DAVID
JOHNSON, RANDY JONES, DARRELL JONES,
KENNETH JORDAN, STEVEN JOYNER, SCOTT
JUNG, FLAVIO JURADO, TODD KAKUDA, TONY
KAPLAN, PAUL KELLEY, ROBERT KELSO, JAMES

KENDRICK, LEONARD KERSHNER, GARY
KESLING, DAVID KEY, MICHAEL KEYSER,
CHARLES KILLION, JAMES KINDRED, TIMOTHY
KINNIRY, PAUL KOCHIS, MICHAEL KROSSMAN,
JAMES KRZYZANOWICZ, PAUL LACHAPELLE,
DANIEL LADD, FRANK LAND, DAVID LANDRY,
MARTY LANDRY, PAUL LANDY, ANTHONY
LANE, CARL LARKINS, CHRISTOPHER LAYTON,
JARED LEE, ADRIAN LEE, EDWARD LESTINA,
GREGORY LEUER, JAMES LEWIS, GEORGE
LIBBEY, JEFFREY LINTZ, LARRY LOCKETT,
TERRY LOGAN, MARK LONG, EARL LOWE,
RICKY LUCAS, LARRY LUFCY, BUELL LUKER,
BRIAN LUSCHEN, STEVEN LUSE, NEIL LUSTEY,
SCOTT MACARTHUR, JOHN MADIGAN, MICHAEL
MARCINIAK, EDWIN MARTIN, ROBERT MASON,
PETER MATHEIS, ROBERT MATTHEWS, DEVAN
MATTOX, JOHN MAULDIN, RONALD MCBEE,
FRANCIS MCCARTHY, BRIAN MCDANIEL, JOHN
MCGOWAN, HERBERT MCINTOSH, EDWARD
MCKINLEY, RONALD MCLEOD, BILLY
MEADOWS, CARLOS MEDINA, CHARLES
MERRITT, JAMES METZLER, WALTER MIKELL,
CHARLES MILLER, LARRY MILLER, JOHN MILNE,
JOHN HENRY MIRELES, TERRY MIZE, ROBERT
MOERER, SEAN MONK, MICHAEL MONTANEZ,
THOMAS MOODY, JOSEPH MOORE, WILLIE
MOORE, JR., GREGORY MOREHEAD, LOUIS
MORENO,FERNANDO MORENO-SOPO, CHARLES
MORGAN, WILLIAM MORRIS, EDDIE MORRISON,
MICHAEL MUCK, ROBERT MUELLER, CHARLES
MURPHY, TERRY MYLES, JOHANES NAKAMOTO,
DAVID NASH, MARK NEIMEIER, RICKIE
NEWBOLT, WILLIAM NEWCOME, DANIEL
NIGHTINGALE, EARL NORTHCUTT, MICHAEL
ODOM, RICHARD OFFUTT, JOHN OSTRANDER,
JERRY OTTO, RONALD OULETTE, DEXTER
OWENS, PRESTON OWENS, DANNY OWENS,
RANDOLPH PALERMO, LEROY PALMER, GENE
PAPPAS, DAVID PARK, ROBERT PARKER, ROY
PARKER, GARY PARROTT, DARRYL PATTERSON,
ROBERT PATTERSON, LUIS PEDROZA, LARRY
PEOPLES, DAVID PETERSON, LEVESTER
PETTIGREW, KEITH PILLICH, STEVEN PLAUCHE,
MARTIN PORATH, DANIEL POTRATZ, ROGER
POTTER, DEREK POTTER, FRED PREVO,

THOMAS PRICE, DONNIE PROCTOR, ROBERT
PULLINS, WINFIELD PURCHASE, RICHARD
PUSTKA, JOSE QUEZADA, JEFF RADER, DAVID
RADFORD, GARY RAFTER, BEN RAMIREZ, JAMES
RANDOLPH, CLAYTON RAPIER, JOSEPH
RAYNOR, JOSEPH REIF, STEVEN RESNICK,
BARRY RHOADS, BILL RICE, DOUGLES RICHEY,
MELVIN RICHMOND, DAVID RICHMOND, CARL
RICOTTA, BENITO RIOS, RONALD ROBISON,
MICHAEL RODARMEL, GEORGE ROLLINS, MARK
ROLON, MICHEAL ROSLER, JODY ROUP, JUAN
SALAS, JOSE SALAZAR, JAMES SALMON,
ALEJANDRO SANDOVAL, ANDRE SANFORD,
GERALD SASLAW, DOLLIE SAWYER, CLIFFORD
SCHAEFER, CLIFFORD SCHEEL, CARL SEXTON,
JESSE SHACKLEFORD, THOMAS SHEFCHUNAS,
THOMAS SHORES, MARK SICKING, ROCKY
SILVA, LARRY SIMMONS, ROBERT SIRMANS,
WILLIAM SLEEPER, KEVIN SMITH, DAVID
SMITH, JERRY SMITH, JAMES R. SMITH, IRVIN
SMITH, JAMES SMITH, JAMES L. SMITH, DANIEL
SMITH, FREDRICK SOUZA, TODD SPEERS, LARRY
SPRIGGS, MARK SPYTEK, MICHAEL STAUFFER,
JACKIE STEELMAN, VINCENT STEPHENS, RALPH
STEWART, DAVID STINNETT, DAVID L.
STINNETT, JAY STRACNER, KENNETH STRECK,
STEPHEN STRICKLAND, ELLIOTT STURM, LEE
SUTTON, CHARLES SWANSON, GARY SWITZER,
VINCENT TAGLIERI, DARWYN TAYLOR, JOHN
TAYLOR, DONALD TAYLOR, DAVID THACKER,
CHARLES THOMAS, DAVID THOMAS, GERALD
THOMPSON, MICHAEL TILLMAN, DUDLEY
TOSSIN, FREDERICK TROMANS JR., STANLEY
TRZEBUNIAK, BRENDAN TUCKER, CHARLES
TUCKER, LARRY TURNER, ANDRE VALENTINE,
JAMES VANSKIVER, DANIEL VAUGHAN,
ANTHONY VENTI, CHARLES VIDRINE, RONALD
WAGNER, CARRINGTON WALDROP II, PAUL
WALSH, JOHN WALSH, RICHARD WASHINGTON,
DAVID WELCH, BRUCE WEST, JOHN
WESTERMEYER, JOHN WHITE, CHRISTOPHER
WHITFIELD, BRADFORD WHITSON, ERIK
WIENER, MARK WILHELM, MARK WILKINSON,
TRACY WILKINSON, TERRY WILKS, RICHARD
WILLIAMS, KELLY WILLIS, WALTER WILLIS,
WESLEY WILSEY, DWIGHT WING, DARRELL

WINN, ALLEN WINTERS, RALPH WOODS,
RODERICK WOODS, WILLIE WOODS, HERBERT
YOUNG, EDWIN YUNGLING, LEON ZAIGER,
WAYNE ZIMMER, BRENT ZUMBRO,

                Plaintiffs,

v.

3M COMPANY, f/k/a Minnesota Mining and
Manufacturing Co., AGC CHEMICALS AMERICAS
INC., AMEREX CORPORATION, ARCHROMA U.S.
INC., ARKEMA INC., BASF CORP., BUCKEYE FIRE
EQUIPMENT COMPANY, CARRIER GLOBAL
CORPORATION, CHEMDESIGN PRODUCTS INC.,
CHEMGUARD INC., CHEMICALS, INC., THE
CHEMOURS CO., CHEMOURS COMPANY FC, LLC,
CHUBB FIRE, LTD., CLARIANT CORP., CORTEVA,
INC, DEEPWATER CHEMICALS, INC., E I. DUPONT
DE NEMOURS, INC., DYNAX CORP., E I. DUPONT
DE NEMOURS AND COMPANY, KIDDE PLC, INC.,
NATION FORD CHEMICAL CO., NATIONAL
FOAM, INC., TYCO FIRE PRODUCTS LP, UNITED
TECHNOLOGIES CORP., UTC FIRE & SECURITY
AMERICAS, CORP., ALLSTAR FIRE EQUIPMENT,
FIRE-DEX, LLC, GLOBE MANUFACTURING CO.,
LLC, HONEYWELL SAFETY PRODUCTS USA, INC.,
LION GROUP, INC., MALLORY SAFETY AND
SUPPLY, LLC, MINE SAFETY APPLIANCES CO.,
LLC, MUNICIPAL EMERGENCY SERVICES, INC.,
PBI PERFORMANCE PRODUCTS, INC., SOUTHERN
MILLS, INC., STEDFAST USA, INC., W.L. GORE &
ASSOCIATES, INC.,

                Defendants.

Defendant 3M Company ("3M"), by and through undersigned counsel, hereby gives notice

of the removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Superior

Court of New Jersey, Morris County, Law Division to the United States District Court for the

District of New Jersey.  As grounds for removal, 3M alleges as follows on personal knowledge as

to its own conduct and status and on information and belief as to all other matters:

## PRELIMINARY STATEMENT

1.      Plaintiffs seek to hold 3M and certain other Defendants liable based on their alleged conduct in designing, manufacturing, and/or selling aqueous film-forming foams ("AFFF") and/or firefighter turnout gear ("TOG") that Plaintiffs allege were used in firefighting activities, thereby causing injury to Plaintiffs.

2.      Specifically, Plaintiffs allege that per- and polyfluoroalkyl substances ("PFAS"), including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"), were contained in Defendants' AFFF (Compl. ¶ 1). Moreover, each Plaintiff expressly alleges that he "regularly used, and was thereby directly exposed to, AFFF . . . in training and to extinguish fires during his working career as a military and/or civilian firefighter" and allegedly suffered injury "as a result of exposure to Defendants' AFFF . . . products" (*id.* ¶¶ 12-919; *see also id.* ¶ 7 ("Plaintiffs' consumption, inhalation and/or dermal absorption of PFAS from Defendant's [sic] AFFF . . . products caused Plaintiffs to develop the serious medical conditions and complications alleged herein")).

3.      AFFF sold to and used by the U.S. military must appear on the Department of Defense ("DoD") Qualified Products List and comply with the military's rigorous specifications ("MilSpec"). Thus, to the extent that Plaintiffs allegedly were exposed in military settings to PFAS from AFFF manufactured by 3M, those PFAS derived from MilSpec AFFF. Under the federal "government contractor" defense recognized in *Boyle v. United Technologies. Corp.*, 487 U.S. 500 (1988), 3M is immune to tort liability for its design and manufacture of MilSpec AFFF and its provision of warnings for the product. Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), 3M is entitled to remove this action in order to have its federal defense adjudicated in a federal forum. Such removal "fulfills the federal officer removal statute's purpose of

protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

## **BACKGROUND**

4.     This action was filed on February 27, 2024 in the Superior Court of New Jersey, Law Division, Morris County, bearing Docket No. MRS-L-396-24. (Ex. A, Summons and Complaint). Venue is proper in this Court pursuant to 28 U.S.C. §§ 110 and 1441(a) because the Superior Court of New Jersey, Morris County,  is located within the District of New Jersey.

5.     3M was served with the summons and complaint on March 1, 2024.  Removal is timely pursuant to 28 U.S.C. § 1446(b).

6.     3M is not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiffs' action as a whole under § 1442(a)(1).  *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Linden v. Chase Manhattan Corp.*, No. 99 Civ. 3970(LLS), 1999 WL 518836, at *1 (S.D.N.Y. July 21, 1999); *Torres v. CBS News*, 854 F. Supp. 245, 246 n.2 (S.D.N.Y. 1994).

7.     Plaintiffs generally allege that Defendants, including 3M, have designed, manufactured, marketed, distributed, and/or sold AFFF products and/or fluorinated surfactants used therein, which contain PFAS, including PFOS, PFOA, and/or their precursors.  (*See, e.g.*, Compl. ¶¶ 1, 4, 920--972.  Each of the Plaintiffs expressly alleges that he "regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during his working career as a military and/or civilian firefighter" and suffered injury "as a result of exposure to Defendants' AFFF . . . products" (*id.* ¶¶ 12-919). Plaintiffs also allege that they used "PFAS-containing AFFF . . . products . . . in their intended manner, without significant change in the products' condition,"

7

(*id.* ¶ 7) and that their "consumption, inhalation and/or dermal absorption of PFAS from Defendant's [sic] AFFF . . . products caused Plaintiffs to develop . . . serious medical conditions and complications," (*id.*).

8.    Plaintiffs assert claims against all Defendants, including 3M, for negligence, (*id.* ¶¶ 1067-70), battery, (*id.* ¶¶ 1071-83), failure to warn, (*id.* ¶¶ 1084-90), defective design, (*id.* ¶¶ 1091-98), strict liability (statutory), (*id.* ¶¶ 1099-1105), strict liability (Restatement), (*id.* ¶¶ 1106-15), fraudulent concealment, (*id.* ¶¶ 1116-23), breach of express and implied warranties, (*id.* ¶¶ 1124-29), and wantonness, (*id.* ¶¶ 1130-34), and seek punitive damages from all Defendants, (*id.* ¶¶ 1135-38).

9.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon all parties to this action, and a copy is being filed with the Clerk of the Superior Court of New Jersey, Law Division, Morris County.

10.    By filing a Notice of Removal in this matter, 3M does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue, and 3M specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

11.    3M reserves the right to amend or supplement this Notice of Removal.

**REMOVAL IS PROPER UNDER THE FEDERAL
OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(A)(1)**

12.    Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer.  Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) it acted under federal authority; (c) its acts, taken pursuant to a federal officer's directions, have a causal nexus

with the plaintiff's claims or injuries or are otherwise related to the action; and (d) it can assert a "colorable" federal defense. *See Mesa v. California*, 489 U.S. 121, 124--25, 129--31, 133--35 (1989); *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson*, 517 F.3d at 135; *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016); *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006).

13.     Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441.  Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).  This is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted).  This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252.  To the contrary, § 1442 as a whole must be "liberally construed" in favor of removal.  *Isaacson*, 517 F.3d at 136.

14.     All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the plaintiff's alleged injuries are caused at least in part by MilSpec AFFF.  *See, e.g.*, *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (denying motion to remand in AFFF case against 3M and other manufacturers and holding that, notwithstanding plaintiffs' assertion "that they do not seek resolution of any claims related to MilSpec AFFF[,] . . . . Plaintiffs cannot decide what defense Defendants might present"); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30,

2018) (denying motion to remand and finding that federal officer removal was proper in a lawsuit against 3M and other manufacturers of MilSpec AFFF).  The court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has also found on multiple occasions that removal under § 1442 is proper where the notice of removal alleges that plaintiffs' injuries are caused at least in part by MilSpec AFFF.  *See* Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 103 (D.S.C. May 24, 2019) ("MDL Order 1"), at 3--6; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2"), at 3--5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3"), at 3--6.  Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, has been properly removed to federal court.[1]

A.    **MilSpec AFFF**

15.    Since the late 1960s or early 1970s, the United States military has used MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property. Indeed, the United States Naval Research Laboratory developed AFFF—its researchers were granted an AFFF-related patent in 1966.[2]  Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[3]

16.    The manufacture and sale of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command.  The applicable

---

[1] Following removal, 3M intends to designate this action for transfer to the MDL.

[2] *See* U.S. Patent No. 3,258,423 (filed Sept. 4, 1963; published June 28, 1966).

[3] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923-2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[4] All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to military procurement. Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[5] The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements. After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[6] Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

17.    From its inception until very recently, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants." All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their chemical precursors—the very compounds at issue in the Complaint here. This requirement has been in force for virtually the entire time period at issue in the Complaint. And although in 2019 the MilSpec removed the modifier "fluorocarbon" from "surfactants," it expressly states that "the DoD intends to acquire and use AFFF with the lowest demonstrable concentrations of . . . PFOS and PFOA" "[i]n the short term." PFOA or PFOS are unavoidably present at some concentrations in fluorocarbon surfactants,

---

[4] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[5] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[6] *Id.*

and the current MilSpec expressly contemplates that AFFF formulations will contain PFOA and PFOS (subject to recently imposed limits).

**B.     All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied**

*1.     The "Person" Requirement Is Satisfied*

18.     The first requirement for removal under the federal officer removal statute is satisfied here because 3M (a corporation) is a "person" under the statute.   For purposes of Section 1442(a)(1), the term "person" includes "corporations, companies, associations, firms, [and] partnerships." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (quoting 1 U.S.C. § 1); *accord Isaacson*, 517 F.3d at 135-36.

*2.     The "Acting Under" Requirement Is Satisfied*

19.     The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out the duties or tasks of a federal officer.  *Papp*, 842 F.3d at 812.  "The words 'acting under' are to be interpreted broadly . . . ."  *Isaacson*, 517 F.3d at 136 (citation omitted).  Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813.

20.     The requirement of "acting under" federal office is met here because Plaintiffs' claims, at least in part, challenge 3M's alleged conduct in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137.  MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "lifesaving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137.  The Naval Research Laboratory states that, "[a]lthough

[it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations" and that 3M "contributed considerably to the success of the development of AFFF."[7]  Accordingly, the military has long depended upon outside contractors like 3M to develop and supply AFFF.  *See Nessel*, 2021 WL 744683, at *3 (holding that 3M and other AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8-9 (same); *see also* MDL Order 1, at 3-6 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2, at 3-5 (same for AFFF used at Part 139 airport); MDL Order 3, at 3-6 (same).  If 3M and other manufacturers did not provide MilSpec AFFF for use at military bases, the government would have to manufacture and supply the product itself.

21.    In designing, manufacturing and supplying the MilSpec AFFF at issue, 3M acted under the direction and control of one or more federal officers.  Specifically, 3M acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DoD.[8]

---

[7] Fulfilling the Roosevelts' Vision, *supra* n.3, at 37.

[8] *See* Dep't of Defense, SD-6, *supra* n.5, at 1.

3.    *The "Under Color of Federal Office" Requirement Is Satisfied*

22.    The third requirement—that the defendant's actions were taken "under color of federal office"—requires a "nexus" between the plaintiff's claims or injuries and the defendant's acts undertaken at the direction of a federal office. As with the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Isaacson*, 517 F.3d at 137.[9]  It is sufficient for a defendant to establish a connection or association between the lawsuit and the federal office. *See Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017) (explaining that 28 U.S.C. § 1442 permits removal of actions "for *or relating to* any act under color of [federal] office"); *Papp*, 842 F.3d at 813; *see also Isaacson*, 517 F.3d at 137-38 (explaining that it is sufficient if the act that allegedly caused or contributed to the plaintiff's injury occurred while the defendant was performing its official duties).

23.    Here, Plaintiffs' claims arise at least in part from 3M's production and sale of AFFF manufactured to military specifications for use at military facilities.  Plaintiffs allege that the use of PFAS in AFFF is the source of their injuries.  3M contends that the use of such chemicals in MilSpec AFFF was required by military specifications.  The conflict is apparent: MilSpec AFFF was developed by 3M and other manufacturers to meet specifications established by the DoD.  Military installations are required to employ MilSpec AFFF.  The design choices Plaintiffs are attempting to impose via state tort law would create a conflict in which 3M could not comply with both the MilSpec and the purported state-prescribed duty of care.  *See Boyle*, 487 U.S. at 509; *see also Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'casual connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1,

---

[9] The "acting under" and "under color of" prongs overlap.  Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction."  *Albrecht*, 2011 WL 5109532, at *5.

at 5-6 ("Here, [Plaintiff]'s claims arise out of use of AFFF products that it claims [3M] manufactured and sold, and for which the U.S. military imposes MilSpec standards. The Court . . . finds that the causation element of federal officer removal is satisfied here."); MDL Order 2, at 5 (finding the causation element of federal officer removal satisfied where 3M's AFFF products, "for which the military imposes MilSpec standards," were used at several Part 139 airports); MDL Order 3, at 5-6 (same as to MilSpec AFFF used at a single airport).

24.     Here, Plaintiffs' purported injuries arise at least in part from MilSpec AFFF. The causal connection between Plaintiffs' alleged injuries and 3M's actions under color of federal office thus is clear. It is irrelevant that Plaintiffs do not expressly contend that they have been injured by MilSpec AFFF. Courts "credit Defendants' theory of the case when determining whether [the] causal connection exists." *Isaacson*, 517 F.3d at 137; *see also Nessel*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present").

### 4.     *The "Colorable Federal Defense" Requirement Is Satisfied*

25.     The fourth requirement ("colorable federal defense") is satisfied by 3M's assertion of the government contractor defense.

26.     At the removal stage, a defendant need only show that its government contractor defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'" *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted). "A defendant 'need not win his case before he can have it removed.'" *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)). At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue."

*Cuomo*, 771 F.3d at 116.[10]  Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants."  *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783-84 (E.D. Pa. 2010).  "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'"  *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

27.    Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."  *Boyle*, 487 U.S. at 512.

28.    3M has satisfied these elements for purposes of removal.  The requirement of "reasonably precise specifications" can be met by evidence showing either (a) that the government's participation in the design of the product "amount[ed] to more than a rubber stamping," or (b) that the government continued to purchase or use a product after the government became aware that the product contained the alleged defect. *Ramey v. Martin-Baker Aircraft Co. Ltd.*, 874 F.2d 946, 950 (4th Cir. 1989).  Naval Sea Systems Command participated in the design of MilSpec AFFF, and its role was not a mere "rubber stamping."  It created (and has updated) detailed specifications governing the product's formulation, performance, testing, storage, inspection, packaging, and labeling.  Those specifications are "reasonably precise," including in requiring the

---

[10] *See also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage.  Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal citation omitted)).

use of PFAS. In addition, in the past and continuing to the present, the DOD has purchased and used MilSpec AFFF with awareness of the product's PFAS content and of the alleged risks associated with PFAS in the product. *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design.").

29.     With respect to the second requirement, the Removing Defendants' products have appeared on the DoD Qualified Products List,[11] which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See Ayo*, 2018 WL 4781145, at *13 ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); *In re AFFF Prod. Liab. Litig.*, 2019 WL 2807266, at *3  (finding that defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications").

30.     Regarding the third requirement, the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA, that AFFF constituents can migrate through the soil and potentially reach groundwater, and that it has been reported that this may raise

---

[11] *See* MIL-F-24385 QPL/QPD History for Type 3 AFFF (Oct. 24, 2014); MIL-F-24385 QPL/QPD History for Type 6 AFFF (Oct. 24, 2014) (both available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873, ECF No. 1969-24 (D.S.C.)).

environmental or human health issues.[12] For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from firefighting exercises are considered to have adverse effects environmentally."[13] In June 1991, the Air Force stated that past Air Force fire training activities resulted in "adverse environmental impact," including "soil contamination" and the "potential" for "groundwater contamination."[14] By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent." In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer. More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[15] Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[16] *See Ayo*, 2018

---

[12] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1-6 (Nov. 4, 2002) (excerpt).

[13] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[14] USAF, Engineering Technical Letter ETL 91-4: Site Selection Criteria for Fire Protection Training Areas 2 (June 14, 1991).

[15] Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1-2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[16] *See* MIL-PRF-24385F(SH), Amendment 4, § 6.6 & Tables I, III (2020),

WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); MDL Order 1, at 5 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . ").

31.     At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks.  *See Twinam v. Dow Chem. Co. (In re "Agent Orange" Prod. Liab. Litig.)*, 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)).  Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies.  *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89-90; *see also Ayo*, 2018 WL 4781145, at *13.

32.     3M's use of PFAS in MilSpec AFFF was required by military specifications.  By seeking to impose tort liability on 3M for alleged injuries to Plaintiffs that were caused in whole or in part by 3M's compliance with military specifications, Plaintiffs are attempting to use state

---

https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

tort law to attack design choices dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

33.     In the MDL, the court has found based on an extensive factual record that the government contractor defense asserted by 3M and other defendants presents genuine issues of fact for trial. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *12, 15 (D.S.C. Sept. 16, 2022). A defense that presents triable issues is by definition better than merely "colorable."

WHEREFORE, 3M hereby removes this action from the Superior Court of New Jersey, Law Division, Morris County to this Court.

RESPECTFULLY SUBMITTED this 29th day of March, 2024.


DATED: March 29, 2024                        Respectfully submitted,

By: */s/ Michael C. Zogby*
     Michael C. Zogby (ID No. 030312002)
     Thomas A. Zelante, Jr. (ID No. 277692018)
     **BARNES & THORNBURG LLP**
     1776 on the Green
     67 E Park Place, Suite 1000
     Morristown, NJ 07960
     Tel.: (973) 775-6101

     *Attorneys for Defendant 3M Company*

20

## CERTIFICATION OF SERVICE

I, Michael C. Zogby, hereby certify that on March 29, 2024, the foregoing Notice of Removal on behalf of Defendant 3M Company was filed electronically with the Court and is available for viewing and downloading from the ECF system. I also certify that a true and correct copy was served via first-class mail on this same date on the following:

Alan T. Friedman
Bagolie Friedman, LLC
648 Newark Avenue
Jersey City, New Jersey 07306
201-656-8500

Merritt Cunningham
Michael G. Stag
Stag Liuzza
One Canal Place 365
2850 New Orleans, LA 70130
504-593-9600

*Attorneys for Plaintiffs*

AGC Chemicals Americas, Inc.
55 E. Uwchlan Ave., Suite 201
Exton, PA 19341

Amerex Corporation
7595 Gadsden Highway
Trussville, AL 35173

Archroma U.S. Inc.
5435 77 Center Drive, #10
Charlotte, NC 28217

Arkema, Inc.
900 1st Avenue
King of Prussia, PA 19406

BASF Corporation
100 Park Ave.
Florham Park, NJ 07932

Buckeye Fire Equipment Company
110 Kings Road
Kings Mountain, NC 28086

Carrier Global Corporation
13995 Pasteur Boulevard
Palm Beach Gardens, FL 33418

ChemDesign Products, Inc.
2 Stanton Street
Marinette, WI 54143

Chemguard, Inc.
One Stanton Street
Marinette, WI 54143

Chemicals, Inc.
12321 Hatcherville Road
Baytown, TX 77521

The Chemours Company
1007 Market Street
Wilmington, DE 19898

Chemours Company FC, LLC
1007 Market Street
Wilmington, DE 19899

Chubb Fire, Ltd.
Littleton Road
Ashford, Middlesex
United Kingdom TW15 1TZ

Clariant Corporation
4000 Monroe Road
Charlotte, NC 28205

Corteva, Inc.
Chestnut Run Plaza 735
Wilmington, DE 19805

Deepwater Chemicals, Inc.
196122 E. County Road 735
Woodward, OK 73801

Du Pont de Nemours Inc.

c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

E.I. Du Pont de Nemours & Co.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Dynax Corporation
103 Fairview Park Drive
Elmsford, NY 10523-1544

Kidde PLC, Inc.
One Carrier Place
Farmington, CT 06034

Nation Ford Chemical Company
2300 Banks Street
Fort Mill, SC 29715

National Foam, Inc.
141 Junny Road
Angier, NC 27501

Tyco Fire Products, LP
1400 Pennbrook Parkway
Lansdale, PA 19466

United Technologies Corporation
8 Farm Springs Road
Farmington, CT 06032

UTC Fire & Security Americas Corporation, Inc.
3211 Progress Drive
Lincolnton, NC 28092

Allstar Fire Equipment
12328 Lower Azusa Road
Arcadia, CA 91006

Fire-Dex, LLC
780 South Progress Drive
Medina, OH 44256

Globe Manufacturing Company LLC
37 Loudon Road
Pittsfield, NH 03263

Honeywell Safety Products USA, Inc.
300 South Tryon Street, Suite 500
Charlotte, NC 28202

Lion Group, Inc.
7200 Poe Avenue, Suite 400
Dayton, OH 45414

Mallory Safety and Supply LLC
1040 Industrial Way
Longview, WA 98632

Mine Safety Appliances Co., Inc.
1000 Cranberry Woods Drive
Cranberry Township, PA 16066

Municipal Emergency Services, Inc.
12 Turnberry Land
Sandy Hook, CT 06482

PBI Performance Products, Inc.
9800-D Southern Pine Boulevard
Charlotte, NC 28273

Southern Mills, Inc.
6501 Mall Boulevard
Union City, GA 30291

Stedfast USA, Inc.
800 Mountain View Drive
Piney Flats, TN 37686

W.L. Gore & Associates Inc.
1901 Barksdale Road
Newark, DE 19711

I hereby certify that the above statements are true. I am aware that if any of the above statements by me and willfully false, I am subject to punishment.

Dated: March 29, 2024                              By: */s/ Michael C. Zogby*
                                                            Michael C. Zogby

                                                            *Attorneys for Defendant 3M Company*